Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS. P.C.
20827 N. Cave Creek Road, Suite 101
Phoenix, AZ 85024

Telephone: (602) 482-4300
Facsimile:  (602) 569-9720
email: davis@scottdavispc.com

*Attorney for Plaintiff Anna Marie Wolf*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Anna Marie Wolf,<br><br>            Plaintiff,<br><br>     v.<br><br>Liberty Life Assurance Company of Boston; USAA; USAA Group Disability Plan,<br><br>            Defendants. | Case No.<br><br>**COMPLAINT** |

Now comes the Plaintiff Anna Marie Wolf (hereinafter referred to as "Plaintiff"), by and through her attorney, Scott E. Davis, and complaining against the Defendants, she states:

**Jurisdiction**

1.     Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits. In addition, this action may be brought before this Court pursuant to 28

-1-

1  U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of
2  the United States.

### Parties

3.  

4.  2. Plaintiff is a resident of Maricopa County, Arizona.

5.  3. Upon information and belief, USAA (hereinafter referred to as the
6.  "Company") sponsored, administered and purchased a group long term disability insurance
7.  policy which was fully insured by Liberty Life Assurance Company of Boston (hereinafter
8.  referred to as "Liberty"). The specific Liberty group disability policy is known as Group
9.  No. GF3-891-419734-01 (hereinafter referred to as the "Policy"). The Company's
10. purpose in sponsoring, administering and purchasing the Liberty policy was to provide
11. disability insurance for its employees. Upon information and belief, the Liberty policy
12. may have been included in and part of an employee benefit plan, specifically named the
13. USAA Group Disability Plan (hereinafter referred to as the "Plan") which may have been
14. created to provide the Company's employees with welfare benefits. At all times relevant
15. hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C.
16. §1002(1).

17. 4. Upon information and belief, Liberty functioned as the claims administrator
18. of the policy; however, pursuant to the relevant ERISA regulation, the Company and/or the
19. Plan may not have made a proper delegation or properly vested fiduciary or discretionary
20. authority for claim administration in Liberty.

21. 5. Upon information and belief, Plaintiff believes Liberty operated under a
22. structural conflict of interest in evaluating her claim due to the fact that it operated in dual
23. roles as the decision maker with regard to whether Plaintiff was disabled as well as the
24. payor of benefits; *to wit*, Liberty's conflict existed in that if it found Plaintiff was disabled it
25. was then liable for payment of her disability benefits.

6. The Company, Liberty and the Plan conduct business within Maricopa County and all events giving rise to this Complaint occurred within Maricopa County.

**Venue**

7. Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

**Nature of the Complaint**

8. Incident to her employment, Plaintiff was a covered employee pursuant to the Plan and the relevant policy and a "participant" as defined by 29 U.S.C. §1002(7). Plaintiff seeks disability income benefits from the Plan and the relevant policy pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B) as well as any other employee benefits she may be entitled to as a result of being found disabled.

9. After working for the Company as a loyal employee, Plaintiff became disabled on or about April 12, 2011 due to serious medical conditions and was unable to work in her designated occupation as an Employee Relations Advisor I. Plaintiff has remained disabled as that term is defined in the relevant policy continuously since that date and has not been able to return to work in any occupation as a result of her serious medical conditions.

10. Following her disability, Plaintiff applied for, received and exhausted her short term disability benefits. Liberty administered Plaintiff's short term disability claim and made the decision that she was disabled and entitled to benefits.

11. Plaintiff then applied for long term disability benefits under the relevant Liberty policy which was also administered by Liberty, meaning it made the decision with regard to whether Plaintiff met the definition of disability. Upon information and belief, the relevant Liberty policy and definition of disability governing Plaintiff's long term disability claim is as follows:

Disability or Disabled means:

    i.    if the Covered Person is eligible for the 24 month Own Occupation benefit, Disability or Disabled means that during the Elimination Period and the next 24 months of Disability the Covered Person, as a result of the Injury or Sickness, is unable to perform the Material and Substantial Duties of his Own Occupation;

    ii.    thereafter, the Covered Person is unable to perform, with reasonable continuity, the Material and Substantial Duties of Any Occupation.

12. In support of her claim and appeal for long term disability benefits, Plaintiff submitted to Liberty medical records from her treating physicians supporting her disability claim as defined by the relevant Liberty policy.

13. In support of her appeal, Plaintiff also submitted to Liberty a Neuropsychological Evaluation Report dated October 19, 2011 and October 21, 2011.

14. Liberty notified Plaintiff in a letter dated December 20, 2011 that it was approving her claim under a Reservation of Rights, explaining that it was not accepting liability in Plaintiff's claim but would pay benefits while it conducted the administrative review of Plaintiff's claim. Liberty paid Plaintiff under a Reservation of Rights from October 9, 2011 through February 9, 2012.

15. As part of its review, Liberty obtained medical records only "paper reviews" of Plaintiff's claim from medical consultants who were actually Liberty's employees, Timothy Belliveau, Ph.D., Frisso A. Potts, M.D. and Andrew O. Brown, M.D. Upon information and belief, because these individuals were Liberty employees, Plaintiff believes they have a conflict of interest and may not be impartial or independent and may be biased in favor of Liberty by providing paper reviews which selectively review or ignore evidence, such as occurred in Plaintiff's claim in order to provide opinions and report(s) which allowed Liberty to deny Plaintiff's claim.

-4-

16.     Plaintiff questions the independence, impartiality and bias of Liberty's own employees to fully and fairly review her claim and she believes the consultants' opinions are adversarial to her claim due to their conflict of interest as Liberty employees.  Plaintiff believes Liberty's structural conflict of interest is a motivating factor why it referred Plaintiff's claim to its own employees for review.

17.     In a letter dated February 9, 2012, Liberty informed Plaintiff it was denying her claim for long term disability benefits.

18.     Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed the February 9, 2012 denial of her claim and in support of her appeal, Plaintiff submitted additional medical and vocational evidence demonstrating she met any definition of disability set forth in the relevant Liberty policy.

19.     In support of her appeal, Plaintiff submitted to Liberty an August 27, 2012 narrative letter authored by her treating board certified physician who opined, "…[Plaintiff] suffers from [medical conditions] which impedes her ADL's and ability to work."

20.     Plaintiff also submitted a narrative letter, Medical Source Statement and Residual Functional Capacity From dated August 20, 2012, which were authored by another treating board certified physician who opined, "…it is within reasonable medical probability to conclude [Plaintiff] is unable to work even at sedentary positions."

21.     As additional support, Plaintiff submitted to Liberty an October 1, 2012 narrative letter authored by a third treating board certified physician who opined Plaintiff has medical conditions which would impact her ability to work.

22.     Plaintiff also submitted to Liberty a Functional Capacity Evaluation Report dated June 27, 2012 which determined after an extensive evaluation of Plaintiff's serious medical conditions, "[Plaintiff's] tests indicate inability to perform tasks, even at the <u>sedentary work level</u>, due to her restrictions and limitations" (original emphasis).

23. Further supporting her appeal, Plaintiff submitted a vocational report from a certified vocational expert dated August 20, 2012. The vocational expert concluded in the report, "It is unmistakable to this consultant that [Plaintiff] is not able to return to any gainful employment."

24. In addition to the medical records and reports submitted to Liberty, Plaintiff also submitted two (2) sworn affidavits from lay persons including an August 2, 2012 affidavit from Plaintiff's husband and a July 30, 2012 affidavit from Plaintiff's prior co-worker and long time friend, who both confirmed Plaintiff is unable to work in any occupation and that her condition has not improved in any way since her date of disability.

25. As part of its review of Plaintiff's claim for long term disability benefits, Liberty again obtained medical records only "paper reviews" of Plaintiff's claim from two (2) non-Liberty employees/medical consultants named Jamie Lewis, M.D. and Ivo Tremont, M.D.

26. Upon information and belief, Plaintiff believes Drs. Lewis and Tremont may be long time medical consultants for or may be frequently retained by the disability insurance industry to provide these types of services. Given this, Plaintiff believes these physicians also have a conflict of interest and an incentive to protect their own consulting relationships with the disability insurance industry and/or Liberty by providing reviews which selectively review or ignore evidence, such as occurred in Plaintiff's claim, in order to provide opinions and report(s) which are favorable to insurance companies and which supported the denial of Plaintiff's claim.

27. In a letter dated September 7, 2012, in order to avoid possible miscommunication, Plaintiff revoked any authorization Liberty or any of its third party vendors may have had to communicate directly with her treating medical providers and requested Liberty and/or any of its third party vendors send any

communication/correspondence desired with her treating medical providers directly to her Counsel's firm in writing, who would then immediately forward the request to Plaintiff's appropriate medical professional for response. Prior to rendering its final denial, Liberty never engage Plaintiff in a dialogue so she could perfect her claim and never provided any written communication/correspondence to Plaintiff or asked that any request be forwarded to Plaintiff's medical professionals.

28. Prior to its final denial, Liberty also never shared with Plaintiff or her treating physicians, the reports authored by Drs. Lewis or Tremont and never engaged Plaintiff or her treating physicians in a dialogue so they could either respond to the report(s) by addressing/clarifying any alleged deficiencies in the record so Plaintiff could perfect her claim. Liberty's failure to provide Plaintiff with its doctors' reports and failure to provide Plaintiff and/or her treating physicians with the opportunity to respond to the reports prior to its final denial, particularly since they were adverse to her claim, precluded a full and fair review pursuant to ERISA and is a violation of Ninth Circuit case law.

29. In a letter dated October 22, 2012, Liberty notified Plaintiff it had denied her appeal for long term disability benefits under the Liberty policy. In the letter, Liberty also notified Plaintiff she had exhausted her administrative levels of review and could file a civil action lawsuit in federal court pursuant to ERISA.

30. Subsequent to the final denial of her long term disability claim, Plaintiff's claim for Social Security Disability benefits was approved, prior to an Administrative Law Judge hearing, with the Social Security Administration finding her unable to engage in *any* occupation as of her date of disability. Plaintiff believes the Social Security Administration's approval of her claim is relevant evidence for this Court to consider with regard to whether Liberty abused its discretion when it denied Plaintiff's claim given the

fact that Social Security's definition of disability is more stringent and harder to meet than the definition of disability in Liberty's policy for the first 24 months of disability.

31.     In evaluating Plaintiff's claim on appeal, Liberty had an obligation pursuant to ERISA to administer Plaintiff's claim "solely in her best interests and other participants" which it failed to do, in part, due to its structural conflict of interest. [1]

32.     Liberty failed to adequately investigate Plaintiff's case and failed to engage Plaintiff and/or her treating medical professionals in a dialogue during the appeal of her claim with regard to what evidence was necessary so Plaintiff could perfect her appeal and claim.  Liberty's failure to investigate the claim and to engage in this dialogue or to obtain the evidence it believed was important to perfect Plaintiff's claim is a violation of ERISA and Ninth Circuit case law and a reason she did not receive a full and fair review.

33.     Plaintiff believes Liberty provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, by failing to credit Plaintiff's reliable evidence; failing to adequately investigate her claim; failing to have her examined by a medical professional since the policy allowed for one; providing multiple one sided, inaccurate reviews of Plaintiff's claim that failed to consider all evidence submitted by her and/or de-emphasized medical evidence which supported Plaintiff's claim; disregarding Plaintiff's self-reported symptoms; failing to consider all the diagnoses and/or limitations set forth in her medical evidence as well as the impact the combination

---

[1] It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

of those diagnoses and impairments would have on her ability to work; failing to provide its doctors' reports and failing to engage Plaintiff and/or her treating medical professionals in a dialogue so she could submit the necessary evidence to perfect her claim and failing to consider the impact the side effects from Plaintiff's medications would have on her ability to engage in any occupation.

34.   Plaintiff further believes the reason Liberty provided an unlawful review which was neither full nor fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, is due to the dual roles Liberty undertook as decision maker and payor of benefits which created a structural conflict of interest.

35.   Plaintiff believes Liberty's conflict of interest is evident in the fact that Liberty approved her short term disability claim for the full time period of that claim, but when Liberty was confronted with the potential of paying Plaintiff for many years and incurring significantly larger liability in her long term disability claim, it denied the claim. Liberty denied Plaintiff's long term disability claim notwithstanding the fact Plaintiff's medical diagnoses and limitations had not changed and the short and long term disability policies contained essentially the same definition of disability for the first 24 months of disability.  Due to its conflict of interest, when Liberty denied Plaintiff's long term disability claim it saved a significant sum of money.

36.   Plaintiff is entitled to discovery regarding the aforementioned conflicts of interest of Liberty and any individual who reviewed her claim and the Court may properly weigh and consider evidence regarding the nature, extent and effect of *any* conflict of interest which may have impacted or influenced Liberty's decision to deny her claim.

37.   With regard to whether Plaintiff meets the definition of disability set forth in the policy, the Court should review the evidence in Plaintiff's claim *de novo*, because even

1  if the Court concludes the policy confers discretion, the unlawful violations of ERISA

2  committed by Liberty as referenced herein are so flagrant they justify *de novo* review.

3      38.    As a direct result of Liberty's decision to deny Plaintiff's disability claim she

4  has been injured and suffered damages in the form of lost disability benefits, in addition to

5  other potential employee benefits she may have been entitled to receive through or from

6  Liberty, the Plan and/or Company as a result of being found disabled.  Plaintiff believes

7  other potential employee benefits may include, but not be limited to, health/medical

8  insurance/benefits as well as any other insurance related coverage or benefits, retirement

9  benefits or a pension, a life insurance policy which may have included a waiver of the

10  premium in the event she was found disabled in the long term disability claim.

11      39.    Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid benefits,

12  prejudgment interest, reasonable attorney's fees and costs from Defendants.

13      40.    Plaintiff is entitled to prejudgment interest at the rate of 10% per annum

14  pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate her for

15  losses she incurred as a result of Defendants' nonpayment of benefits.

16      WHEREFORE, Plaintiff prays for judgment as follows:

17      A.    For an Order requiring Defendants to pay Plaintiff disability benefits and

18  any other employee benefits she may be entitled to as a result of being found disabled

19  pursuant to the Liberty policy from the date she was first denied these benefits through

20  the date of judgment and prejudgment interest thereon;

21      B.    For an Order directing Defendants to continue paying Plaintiff the

22  aforementioned benefits until such time as she meets the conditions for termination of

23  benefits;

24      C.    For attorney's fees and costs incurred as a result of prosecuting this suit

25  pursuant to 29 U.S.C. §1132(g); and

26

1  D. For such other and further relief as the Court deems just and proper.

DATED this 20th day of February, 2013.

SCOTT E. DAVIS. P.C.

By: /s/ Scott E. Davis
    Scott E. Davis
    Attorney for Plaintiff